IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION ONE

| | | |
|---|---|---|
| JC AVIATION INVESTMENTS, LLC, a Washington limited liability company, | ) ) ) | No. 81539-3-I |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| HYTECH POWER, LLC, a Washington limited liability company, and HTP, INC., a Washington corporation, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | |

VERELLEN, J. — Parties can be compelled to arbitrate only the matters they agreed to arbitrate. Because the unambiguous language of the arbitration clause in the limited liability corporation (LLC) agreement between members HTP, Inc., and JC Aviation Investments, LLC (JCAI) is narrowly drafted and does not encompass the parties' disputes, we affirm the trial court order denying HTP's motion to compel arbitration.

Because HTP fails to satisfy the standards for discretionary review, we deny review of other issues.

<u>FACTS</u>

HyTech Power, LLC researches and builds tools to make internal combustion engines more efficient. It was formed on June 14, 2018 with an LLC

agreement signed by its two members, JCAI and HTP. JCAI holds 52 percent of HyTech and is one of its secured creditors. HTP holds 48 percent of HyTech. HyTech has a five-member board of directors, with JCAI controlling three seats and HTP the other two.

Over the spring of 2020, relations between JCAI and HTP frayed as HyTech's financial position became more perilous. On March 2, 2020, the board met to discuss HyTech's "paths forward" when it had "no cash resources" and was "insolvent."[1] It also noted secured creditor Acamar Investments, Inc. had, without board approval, been paying for HyTech employees to take international business trips to sell HyTech's product. On March 6, the board unanimously passed a resolution deciding it was "in the best interests of the Company to immediately discontinue employment of all employees" because HyTech was insolvent, was unable to meet payroll, had defaulted on $2.3 million in debt to its creditors, and was unable to agree on new financing offers.[2] Shortly thereafter, HTP executive chairman and HyTech board representative Henry Dean asked the board to rescind that decision. The board declined, but HTP obtained more outside funding from Acamar to rehire HyTech's employees.

On April 9, the board met, discussed outside funding from Acamar, and unanimously agreed to retroactively reinstate its employees until April 17 when "[a]ll company employees will be terminated" unless the board agreed to additional

---

[1] Clerk's Papers (CP) at 1540.
[2] CP at 1293.

funding.[3] The board also retroactively authorized new funding provided from January through April 15 and agreed to refuse any additional new funding.

On May 12, the board had a contentious meeting where HTP surprised the JCAI board members by announcing it was independently funding beta tests of HyTech's product and would continue to do so "even if a lawsuit was filed."[4] The same day, JCAI filed a petition seeking judicial dissolution of HyTech and appointment of a general receiver to liquidate the company's assets. On May 20, HTP told the board beta testing was ongoing, and Acamar filed a CR 24 motion to intervene in the action for dissolution and appointment of a receiver. On May 27, HyTech filed a motion for a temporary restraining order (TRO) enjoining HTP from using HyTech's assets or conducting business in its name. On May 28, superior court Commissioner Judson denied Acamar's motion to intervene, declined to consider the motion to dissolve HyTech, and referred the case to Judge McDonald for trial on dissolution and appointment of a receiver. On May 29, HTP filed a motion to compel arbitration of JCAI's motion for dissolution and appointment of a receiver.

On June 3, HyTech filed for a preliminary injunction to enjoin HTP from using HyTech's assets or conducting business in its name. On June 4, Commissioner Judson granted HyTech's request for a TRO to expire on June 16 when Judge McDonald would consider the motion for a preliminary injunction. On

---

[3] CP at 1179.
[4] CP at 1547.

June 16, Judge McDonald heard argument on HTP's motion to compel arbitration and HyTech's motion for a preliminary injunction.  Judge McDonald first denied the motion to compel arbitration, explaining the LLC agreement did not encompass the issues of dissolution, appointment of a receiver, or injunctive relief.  He then granted the preliminary injunction, finding "[n]one of HTP's operations of HyTech's business or use of its assets were authorized by the Board."[5]

On June 17, HTP appealed, as a matter of right, denial of its motion to compel arbitration and sought discretionary review of the preliminary injunction. Judge McDonald concluded RAP 7.2(a) precluded further proceedings as of June 17 when this court accepted review of the motion to compel, and he struck the pending trial on the motions for dissolution and appointment of a receiver until this appeal is resolved.  A commissioner of this court referred HTP's motion for discretionary review to us because its issues were closely related to the merits of HTP's direct appeal.

ANALYSIS

I.  Arbitration

We review denial of a motion to compel arbitration de novo.[6]  The parties agree the LLC agreement is valid and the court, rather than an arbitrator, decides threshold questions of arbitrability.  But they dispute whether the LLC agreement

---

[5] CP at 1632.

[6] Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009) (citing Adler v. Fred Lind Manor, 153 Wn.2d 331, 342, 103 P.3d 773 (2004)).

compels arbitration of dissolution, appointment of a receiver, and injunctive relief. Thus, the key question is whether those issues are within the scope of the arbitration clause in the parties' LLC agreement.[7]

HTP argues the Federal Arbitration Act (FAA), 9 U.S.C. § 2, applies here and compels arbitration. The threshold issue of arbitrability is the same under the FAA and Washington's Uniform Arbitration Act, chapter 7.04A RCW: whether the parties agreed to arbitrate a particular dispute.[8] Both federal and Washington law presume a dispute is arbitrable, so any doubt must be resolved in favor of arbitration.[9]

Section 12.13 of the LLC agreement contains the arbitration clause here:

> The parties hereto will use their reasonable best efforts to resolve <u>any dispute hereunder</u> through good faith negotiations. In the event a dispute cannot be resolved informally within thirty (30) days of notice by one party to the other of such dispute, the parties agree

---

[7] See <u>Jeoung Lee v. Evergreen Hosp. Med. Ctr.</u>, 7 Wn. App. 2d 566, 572, 434 P.3d 1071 (2019) (for a motion to compel arbitration, a court considers both validity and scope of an arbitration clause) (quoting <u>Cox v. Kroger</u>, 2 Wn. App. 2d 395, 404, 409 P.3d 1191 (2018)), <u>aff'd</u>, 195 Wn.2d 699, 464 P.3d 209 (2020).

[8] See <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("This Court has determined that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" ) (quoting <u>Steelworkers v. Warrior & Gulf. Nav. Co.</u>, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)); <u>Burnett v. Pagliacci Pizza, Inc.</u>, 196 Wn.2d 38, 48, 470 P.3d 486 (2020) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (quoting <u>Satomi</u>, 167 Wn.2d at 810).

[9] <u>Gandee v. LDL Freedom Enters., Inc.</u>, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013) (citing <u>Zuver v. Airtouch Comms., Inc.</u>, 153 Wn.2d 293, 301, 103 P.3d 753 (2004)).

that such dispute will be resolved exclusively through final and binding arbitration.[10]

The LLC agreement provides for arbitration of "any dispute hereunder." HTP argues the arbitration clause should be read broadly, asserting it is the equivalent of clauses compelling arbitration for disputes "arising out of" and "relating to" an underlying agreement. But we reject the premise that a dispute "under" an agreement is just as broad as a claim "arising out of" or "relating to" the agreement.[11] Neither "arising out of," "relating to," nor any similar terms appear in

---

[10] CP at 163 (emphasis added).

[11] HTP relies on David Terry Investments, LLC-PRC v. Headwaters Development Group Limited Liability Company, 13 Wn. App. 2d 159, 167-69, 463 P.3d 117 (2020), where Division Three of this court concluded the phrases "arising out of," "relating to," and "over this" had the same broad meaning when used in arbitration clauses. Because the operative word here, "hereunder," is not considered in David Terry, it is not apt. We also note that David Terry relies on a Colorado Court of Appeals case, Digital Landscape Inc. v. Media Kings LLC, 2018 COA 142, 440 P.3d 1200 (2018), to identify a majority federal rule and conclude "arising out of," "relating to," "over this," "and similar phrases" are indistinguishable and should all be construed broadly. 13 Wn. App. 2d at 167-68. But Digital Landscape reviewed how federal courts construed the phrase "arising under" because that was the language of the arbitration clause at issue, not "arising out of," "relating to," or "over this." 440 P.3d at 1203. Digital Landscape does not support David Terry's conclusions.

To the extent David Terry holds all phrases similar to "arising out of," "relating to," and "over this" must be construed identically, we disagree. Individual words and phrases matter and must be interpreted in each contract to determine whether the parties intended to arbitrate a dispute. Satomi, 167 Wn.2d at 810; see Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005) (applying the objective manifestation theory of contract). Clauses requiring arbitration of disputes "arising out of" are interpreted broadly. See McClure v. Davis Wright Tremaine, 77 Wn. App. 312, 314-15, 890 P.2d 466 (1995) (explaining the phrase has a broad scope). Clauses requiring arbitration of disputes "arising under" or "hereunder" are interpreted narrowly. Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 924 (9th Cir. 2011) (citing Mediterranean Enter. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983)); see Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 307-08, 130 S. Ct. 2847, 177 L.

6

the arbitration clause here. Because the arbitration clause is narrowly limited to "any dispute hereunder," we decline to speculate on the impact a broader arbitration clause would have.[12]

Most importantly, the key provisions in the arbitration clause at issue here include terms specifically defined in the agreement. Section 12.13 mandates arbitration of "any dispute hereunder."[13] In turn, section 1.02 specifies that "'hereunder' refer[s] to this Agreement as a whole."[14] Section 1.01 defines "Agreement" as "this Limited Liability Company Agreement, as executed and as it may be amended."[15] And section 12.07 distinguishes the LLC agreement from other documents associated with HyTech: "This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the

---

Ed. 2d 567 (2010) (describing the phrase "arising under this agreement" as "relatively narrow") (citing Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers Int'l, 370 U.S. 254, 256-57, 82 S. Ct. 1346, 8 L. Ed. 2d 474 (1962)); but see Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1086 (9th Cir. 2018) (construing the phrase "any disputes arising out of or related to" broadly). When, as here, the parties specifically define "hereunder," we interpret the contract to effectuate the defined scope of their agreement to arbitrate. See Nelson v. Westport Shipyard, Inc., 140 Wn. App. 102, 117, 163 P.3d 807 (2007) ("[W]e look to the language of the agreement to determine the scope of the arbitration clause.") (citing Drake Bakeries, 370 U.S. at 256; Mediterranean Enter., 708 F.2d at 1464).

[12] See Walker v. Munro, 124 Wn.2d 402, 418, 879 P.2d 920 (1994) (courts may not "render advisory opinions or pronouncements upon abstract or speculative questions").

[13] CP at 163.

[14] CP at 128.

[15] CP at 120.

subject matter contained herein and therein."[16]  Thus, arbitration is required for a dispute about the LLC agreement itself, exclusive of documents not part of the "Agreement" defined in section 1.01.  The agreement's narrow, unambiguous language is sufficient to show the parties' objective intent to limit the scope of arbitration.[17]

A.  Dissolution

HTP contends arbitration is required for the issue of dissolution because only an arbitrator can decide whether JCAI or HTP breached the operating agreement and whether either breach impacts who will serve as HyTech's liquidator.  HTP mischaracterizes its motion to compel arbitration.

On May 12, JCAI filed its petition to dissolve HyTech and appoint a receiver.  Specifically, JCAI requested a decree of judicial dissolution pursuant to RCW 25.15.274 and appointment of a general receiver.  On May 29, HTP filed its motion to compel arbitration, asking the court to decide "[w]hether this action for judicial dissolution of HyTech and for appointment of a general receiver is a[n arbitrable] dispute between JCAI, HTP and HyTech under the LLC Agreement."[18]

---

[16] CP at 162.

[17] See Healy v. Seattle Rugby, LLC, ___ Wn. App. 2d ___, 476 P.3d 583, 587 (2020) (under objective manifestation theory of contracts, parties' intentions are based upon the reasonable meaning of their words) (citing Hearst, 154 Wn.2d at 503.

[18] CP at 947 (emphasis added).  HTP filed an amended motion to compel arbitration on June 1.

HTP argued whether JCAI breached the LLC agreement "bears directly on the expressed terms in the LLC Agreement and is, thus, subject to arbitration."[19]

Whether a dispute is arbitrable is decided by the terms of the parties' agreement without considering the merits of the dispute.[20] We read agreements to uphold the parties' objective intent as shown by the terms used.[21] Agreements should be read to give meaning to the parties' chosen terms and to avoid "'render[ing] some of the language meaningless or ineffective.'"[22]

Section 11.01 of the operating agreement identifies four "dissolution events":

> (a) The determination of the Members to dissolve the Company;
>
> (b) At the election of a non-defaulting Member, in its sole discretion, if the other Member breaches any material covenant, duty or obligation under this Agreement . . ., which breach remains uncured for thirty (30) days after written notice of such breach was received by the defaulting member;
>
> (c) The sale, exchange, involuntary conversion, or other disposition or Transfer of all or substantially all the assets of the company; or

---

[19] CP at 949.

[20] Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 403, 200 P.3d 254 (2009); see Nelson, 140 Wn. App. at 117 ("[W]e look to the language of the agreement to determine the scope of the arbitration clause.") (citing Drake Bakeries, 370 U.S. at 256; Mediterranean Enter., 708 F.2d at 1464).

[21] Hearst, 154 Wn.2d at 503-04.

[22] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 140, 317 P.3d 1074 (2014) (quoting Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)).

> (d) The entry of a decree of judicial dissolution under
> RCW 25.15.274 of the Washington [Limited Liability Company]
> Act.[23]

Because JCAI invoked only section 11.01(d) as the basis for dissolution and HTP sought arbitration of only JCAI's motion, the question is whether the parties intended to arbitrate judicial dissolution.

Section 11.01(d) requires dissolution upon "entry of a decree of judicial dissolution under RCW 25.15.274."[24] RCW 25.15.274 states "the superior courts may order dissolution." By allowing for dissolution "under RCW 25.15.274," section 11.01(d) is an objective manifestation that a party to the LLC agreement may seek a decree of judicial dissolution in superior court, as contemplated by the statute. In the absence of a dispute about the meaning of section 11.01(d) or the LLC agreement, JCAI could petition for judicial dissolution without arbitration.[25]

Nor is an arbitrator required to determine whether a decree of judicial dissolution is appropriate. RCW 25.15.274 allows entry of a decree of judicial dissolution following:

---

[23] CP at 157 (emphasis added).

[24] Id.

[25] HTP emphasizes the broad grant of authority to the arbitrator contained in section 12.13(c) of the LLC agreement possibly includes the ability to enter a decree of judicial dissolution. JCAI argues RCW 25.15.265 and RCW 25.15.018(3)(k) limit this authority to superior courts. Even assuming an arbitrator has the authority to order a decree of judicial dissolution, the LLC agreement does not deprive JCAI of the ability to seek such a decree directly from a court. Because HTP agrees the parties intended to resolve threshold disputes like this in court and the plain language of the LLC agreement does not compel arbitration of judicial dissolution, we need not address further this question of an arbitrator's authority.

> application by a member or manager . . . whenever: (1) [i]t is not reasonably practicable to carry on the limited liability company's activities in conformity with the certificate of formation and the limited liability company agreement; or (2) other circumstances render dissolution equitable.

This determination does not require resolving a dispute under the LLC agreement. The court must determine whether, under these circumstances, it is "reasonably practicable" for HyTech to continue operating in the manner required in its LLC agreement.[26]  For example, a mutually acknowledged deadlock or agreement to dissolve HyTech would support a dissolution with no dispute over the meaning of the LLC agreement itself.  Because this issue arises from circumstances outside the terms of the operating agreement, it does not require arbitration.

HTP argues a related section of the LLC agreement, 11.03, shows that the parties intended to arbitrate any dissolution.  It requires that HyTech must be wound up and liquidated upon dissolution.  Section 11.03(a) provides that JCAI must serve as the liquidator "unless the Company is being dissolved pursuant to Section 11.01(b) based on a breach by JCAI, in which case the Liquidator shall be HTP."[27]  Thus, at most, section 11.03(a) could require an arbitrator to determine a question of breach only if HyTech was being dissolved pursuant to section 11.01(b).  HTP asserted during oral argument that it unilaterally declared a dissolution and alleged that JCAI breached the operating agreement.  But its motion to compel did not seek to arbitrate dissolution of HyTech under section

---

[26] RCW 25.15.274.

[27] CP at 158.

11.01(b).[28] Because the issue of dissolution for breach under section 11.01(b) was not raised before nor addressed in the trial court, we need not decide whether arbitration would be compelled under that section.[29]

### B. Receiver

HTP argues the operating agreement prohibits appointment of "a third-party receiver" because the operating agreement requires that either JCAI or HTP serve as liquidator. JCAI contends the receiver issue is not arbitrable because its security agreement with HyTech, not the operating agreement, provides for appointment of a receiver. And JCAI expressly relied upon section 4.04 of its security agreement to petition for appointment of a receiver.

JCAI's security agreement was executed between itself and HyTech on January 7, 2019. It does not contain an arbitration clause. The LLC agreement was executed between JCAI and HTP on June 14, 2018, and does not provide for appointment of a receiver. Section 4.05(e) of the LLC agreement states JCAI's security interest in HyTech's assets "will be evidenced by a separate agreement."[30] Because arbitration is required only for disputes under the LLC agreement and the receivership provision in JCAI's security agreement is entirely

---

[28] See CP at 947 (asking for arbitration of "this action for judicial dissolution").

[29] RAP 2.5(a).

[30] CP at 134-35.

separate and not subject to an arbitration clause, the court did not err by concluding arbitration of the request for a receiver was not compelled.[31]

HTP contends this question is arbitrable because the liquidator's powers under the LLC agreement overlap with the powers of a general receiver. But this argument is not properly before us. A receiver's authority is set by statute, court rule, and court order.[32] The trial court has not decided whether JCAI can request appointment of a general receiver, whether a receiver is necessary, or the scope of a possible receivership. The only question before us is whether the LLC arbitration provision mandates arbitration of JCAI's petition for a receiver under the security agreement. We decline to issue an advisory opinion on issues that may never arise.[33]

### C. Injunctive relief

HyTech requested a TRO and a preliminary injunction against HTP and its chairman because of their ongoing refusal to comply with the HyTech board's decision to terminate all employees as of April 17, 2020. HTP argues the operating agreement limits HyTech to seeking injunctive relief from an arbitrator and not a superior court.

---

[31] See Satomi, 167 Wn.2d at 810 (Because "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (quoting Howsam, 537 U.S. at 83).

[32] RCW 7.60.060.

[33] Walker, 124 Wn.2d at 418.

Section 12.13(e) provides that "[i]n lieu of seeking injunctive relief before a court, ether party may, <u>in its sole discretion</u>, seek and obtain an injunction from the arbitrator. Either party may apply for and obtain a temporary restraining order and/or preliminary injunction on an expedited basis from an arbitrator."[34]

HTP argues this section provides each party the option of seeking an injunction that can be granted only by an arbitrator. But this interpretation makes "in its sole discretion" meaningless because the law already provides HTP and JCAI the power to seek or not seek an injunction.[35] Because we interpret contracts to give meaning to each term,[36] HTP's interpretation is not persuasive.

Read to give each term meaning, section 12.13(e) allows each party the choice, "in its sole discretion," to "seek and obtain an injunction from the arbitrator" instead of "seeking injunctive relief before a court." Although section 12.13(c) provides that an arbitrator "shall have the same authority to award remedies and damages as provided to a judge and/or jury,"[37] that grant of authority to an arbitrator does not itself restrict the parties to injunctive relief from an arbitrator only. Allowing either party the discretion to seek injunctive relief from an arbitrator, who has clear authority to grant an injunction, does not create ambiguity or uncertainty about the scope of arbitration. Thus, the court did not err by

---

[34] CP at 164 (emphasis added).

[35] Ch. 7.40 RCW; CR 65.

[36] <u>GMAC</u>, 179 Wn. App. at 140 (quoting <u>Wagner</u>, 95 Wn.2d at 101).

[37] CP at 163.

concluding the LLC agreement did not compel arbitration of HyTech's request for injunctive relief.[38]

## II. Stay Pending Arbitration

HTP contends the court erred by not entering a stay on May 29 because RCW 7.04A.070 compelled the court to stay all proceedings when HTP filed its motion to compel arbitration. As a question of law, we review this issue de novo.[39]

RCW 7.04A.070(5) provides that following a motion to compel arbitration, "the court shall on just terms stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section." Assuming without deciding that HTP's interpretation is correct, HTP fails to demonstrate a reviewable error.

HTP moved to compel arbitration on May 29. Judge McDonald denied the motion on June 16. The only court action between those dates was Commissioner Judson's entry of a TRO on June 4. The TRO automatically terminated at 9:00 a.m. on June 16. Judge McDonald stayed further proceedings as of June 17 when

---

[38] HTP argues the court erred by granting injunctive relief when HyTech "plainly alleges its request was made because HTP was not complying with the LLC agreement," mandating arbitration. Appellant's Br. at 39. Although section 12.13 states "any disputes hereunder . . . will be resolved exclusively" through arbitration, CP at 163, this narrow clause does not compel arbitration of the injunction because HTP does not establish the injunction required resolving a dispute about the meaning of the LLC agreement. Rather, HyTech's request for injunctive relief arose from HTP's conduct, ignoring the HyTech board's decision terminating all HyTech employees.

[39] Perkins Coie v. Williams, 84 Wn. App. 733, 736, 929 P.2d 1215 (1997) (citing Our Lady of Lourdes Hosp. v. Franklin County, 120 Wn.2d 439, 443, 842 P.2d 956 (1993)).

HTP filed its notice of appeal. The alleged failure to stay does not meet the criteria for review as a matter of right under RAP 2.2(a). And HTP does not demonstrate that the absence of an immediate stay warrants discretionary review under RAP 2.3(b). We decline to review this alleged error.[40]

III. Acamar's Status as an Intervenor or Indispensable Party

HTP argues Acamar was an indispensable party and should have been joined under CR 19(a). It assigns error to the court's decision to "not require JCAI to join Acamar as an additional party."[41] We decline to consider these issues because they are not properly before us.

Acamar filed a CR 24 motion to intervene on May 20. Commissioner Judson denied it eight days later. Acamar has not appealed that decision, and HTP does not explain why it can assert any legal theory on Acamar's behalf.[42]

To the extent HTP's appeal rests on its CR 19(a) motion to dismiss for failure to join an indispensable party, its position is still unavailing. In HTP's response to JCAI's dissolution petition, it argued the petition should be dismissed pursuant to CR 19(a) because Acamar was an indispensable party. But the court

---

[40] In its reply brief, HTP appears to imply prejudice from Judge McDonald allowing argument on June 16 on both arbitrability and the preliminary injunction. Judge McDonald made clear that he would decide the issue of arbitrability of the preliminary injunction first "because that would be dispositive of the other motions." Report of Proceedings (June 16, 2020) at 107. HTP fails to show prejudice from both motions being before the court on the same day.

[41] Appellant's Br. at 2.

[42] See Walker, 124 Wn.2d at 419 ("The standing doctrine prohibits a litigant from raising another's legal rights.").

never reached this issue. Judge McDonald denied HTP's motion to compel on June 16, and HTP filed its notice of appeal on the 17th. All proceedings on the dissolution petition were then stayed. HTP's motion to dismiss under CR 19(a) was never considered or decided, giving us nothing to review. Because HTP has not presented a justiciable decision for review, we decline to consider the merits of this issue.[43]

IV. Discretionary Review

Judge McDonald enjoined HTP, HTP's chairman, and HTP's agents from "conducting HyTech's business operations or using any of HyTech Power, LLC's products, assets, contact lists, and any other proprietary information in any way."[44] HTP requested discretionary review, and Commissioner Koh referred HTP's request to us.

HTP contends review is warranted under RAP 2.3(b)(2) because the preliminary injunction "disturbed the status quo."[45] RAP 2.3(b)(2) "was intended to

---

[43] We note that although DeLong v. Parmelee, 157 Wn. App. 119, 165, 236 P.3d 936 (2010), states a CR 19 motion may be made for the first time on appeal, its reasoning should not be followed. DeLong allowed a CR 19 motion to be made for the first time on appeal because "a trial court lacks jurisdiction if all necessary parties are not joined." Id. (citing Treyz v. Pierce County, 118 Wn. App. 458, 462, 76 P.3d 292 (2003)). But as this court explained in Matter of Dependency of L.S., 200 Wn. App. 680, 687-89, 402 P.3d 937 (2017), that reasoning was expressly overruled more than 30 years ago in Chemical Bank v. Washington Public Power Supply System, 102 Wn.2d 874, 887-88, 888 n.4, 691 P.2d 524 (1984).

[44] CP at 1633.

[45] Appellant's Br. at 44. HTP also asserts review should be granted under RAP 2.3(b)(1), which allows review when the court "has committed an obvious error which would render further proceedings useless." Id. at 42. Because HTP does not argue why entry of a preliminary injunction rendered further proceedings useless, review is not warranted under RAP 2.3(b)(1). Regardless, RAP 2.3(b)(2)

---

17

apply 'primarily to orders pertaining to injunctions.'"[46]  It allows review when the court "has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act."

HTP argues review is required because, first, the injunction changed HyTech's business by shutting down operations and, second, prohibited it from using HyTech's intellectual property for any reason when the operating agreement permits use of proprietary information "to monitor or analyze HTP's investment."[47]

The injunction merely protected HyTech's board's right to manage the company and did not change the status quo by shutting down its operations.  On March 6, the board unanimously agreed to terminate all employees.  It affirmed this decision the following month when it again agreed unanimously to terminate all employees as of April 17.  HyTech's board, and not the court, effectively ceased its business operations.

---

is more suitable when seeking review of a preliminary injunction.  See JUDGE STEPHEN J. DWYER, LEONARD J. FELDMAN, HUNTER FERGUSON, The Confusing Standards for Discretionary Review in Washington and A Proposed Framework for Clarity, 38 SEATTLE U. L. REV. 91, 102 (2014) ("RAP 2.3(b)(2) should be limited to trial court orders granting or denying injunctive relief and other orders that impact parties' rights outside litigation proceedings . . . . RAP 2.3(b)(1), in turn, should apply to orders that affect the litigation.").

[46] State v. Howland, 180 Wn. App. 196, 206-07, 321 P.3d 303 (2014) (quoting GEOFFREY CROOKS, Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure, 61 WASH. L. REV. 1541, 1545-46 (1986) (quoting RAP 2.3(b) cmt. b).

[47] Appellant's Br. at 44.

A petitioner seeking a preliminary injunction must demonstrate (1) a clear legal or equitable right, (2) a well-grounded fear that right will be immediately invaded, and (3) that the invasion will cause actual and substantial injury.[48] HTP does not address these criteria when arguing how the court committed probable error. Indeed, as HyTech notes,[49] HTP does not directly address the question of probable error in its opening brief.[50]

To the extent HTP's opening brief could be construed as asserting a probable error, it argues the preliminary injunction deprived it of the ability to use HyTech's proprietary information to monitor its investment in the company as allowed by section 12.03(a) of the operating agreement.[51]

We review a grant of a preliminary injunction for abuse of discretion.[52] A court abuses its discretion when its decision rests upon untenable grounds or was made for untenable reasons.[53]

---

[48] Rabon v. City of Seattle, 135 Wn.2d 278, 284, 957 P.2d 621 (1998) (citing Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)).

[49] HyTech Resp't's Br. at 14.

[50] See Appellant's Br. at 44-45 (arguing the preliminary injunction was erroneous only because it altered the status quo).

[51] Appellant's Br. at 44; CP at 160 (Section 12.03 provides: "[N]o member shall, directly or indirectly, disclose or use (other than solely for the purpose of such member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for . . . advantage or profit . . . any Confidential Information.") (emphasis added).

[52] Speelman v. Bellingham/Whatcom County Hous. Auths., 167 Wn. App. 624, 630, 273 P.3d 1035 (2012) (citing Rabon, 135 Wn.2d at 284).

[53] Id. at 639 (citing Rabon, 135 Wn.2d at 284).

Here, it is undisputed HyTech has a right to control its employees, and it is undisputed HTP paid HyTech's terminated employees to continue soliciting business from prospective customers and to engage in beta testing. Because HTP used its knowledge of HyTech's proprietary information to repeatedly interfere in HyTech's business and makes no more than a bald assertion of its inability to monitor its investment, HTP fails to demonstrate review is warranted under RAP 2.3(b).[54]

Therefore, we affirm the denial of the motion to compel arbitration and deny discretionary review of other issues.[55]

_____

WE CONCUR:

_____     _____

---

[54] To the extent HTP addresses probable error in its reply brief, it raises new issues that we decline to address. RAP 2.5(a).

[55] Because it is not necessary to resolve the issues on appeal, we deny HTP's motion to supplement the record.